Frank A. G-ulotxa, J.
This is an action to foreclose a mortgage given as collateral security to the Island Factors Co. and thereafter assigned to the plaintiff.
The facts leading up to this assignment are as follows: Prior to July 7, 1954 Kaup Contracting Corp. was the owner of a certain restaurant located in Hempstead, New York. The stock in said corporation was wholly owned by plaintiff. By virtue of a number of sales of said restaurant, Kaup eventually became the owner of a first chattel mortgage on the business, good will and chattels thereof, executed by Restaurant Venus, Inc., in the principal sum of $23,428.51. Immediately after the purchase Venus needed “ fresh money ”. Island Factors agreed to lend Venus the required money provided Kaup would subordinate its chattel mortgage to a chattel mortgage to be given by Venus to Island Factors to secure the repayment of $9,650. Kaup agreed thereto upon condition that it receive $4,000 in accelerated payments on account of its chattel mortgage. This sum was paid to Kanp and it subordinated its mortgage to a chattel mortgage in the sum of $9,650 executed by Venus to Island Factors to secure its loan which was made on May 6, 1957. As additional collateral security Island also received a second mortgage from defendant Clara Appolonio, who is the wife of a corporate officer of Venus, on her home, which mortgage is the subject of this action.
As a result of these accelerated payments no further payment was due Kaup from Venus until May 15,1958.
After paying some $1,400 to Island, Venus defaulted in its installment payment due on or about October 18, 1957. Thereafter Island Factors declared a default under the chattel mortgage and after due notice to all parties, including Kaup, the goods and chattels were sold on December 7, 1.957 by an auctioneer and purchased by Island for $2,500.
*685 Shortly after the sale, as a result of a talk between Herman Lazarus, one of the principals of Island Factors, and Anthony D’Agostino, an officer and stockholder of Venus, the former in consideration of the latter’s turning over the key to the restaurant premises and surrendering peaceable possession thereof to Island, promised defendant that whatever consideration Island Factors received on a resale of the business and chattels would be credited to the indebtedness. In his words, “I released them verbally”. According to Lazarus, at the time of repossession in December, 1957, there was due from Venus between $5,000 and $6,000. In about January, 1958 Island Factors resold to one Faber for some $15,000.
In February, 1958 plaintiff’s husband, feeling Kaup had been 1 ‘ stuck ’ ’ on its subordinated chattel mortgage and that Island Factors had gotten out whole, insisted upon an assignment of the real estate mortgage executed by defendant. The principals of Island Factors testified that they told Mr. Olafsson that the debt had been extinguished by reason of the agreement made in consideration of a surrender, but, upon his continued insistence, an assignment of that mortgage was given to plaintiff “ for whatever it was worth ”. In passing it will be noted that plaintiff received no estoppel certificate and the usual representation appearing in the printed form of assignment as to the amount then due was left blank. Mr. Hamilton, attorney for Island Factors, who drew the instrument, said this omission was intentional, because he too had informed Olafsson that in his opinion nothing was due. The note for which the mortgage, was given as security was never delivered to Olafsson.
It is an elementary principle of law that the assignee received only such rights as the assignor had at the time of the assignment and that the assignee took subject to any defenses defendant had against the assignor. (Rapps v. Gottlieb, 142 N. Y. 164.) Here the creditor made an agreement with the debtor to credit him with the amount realized on a subsequent sale. The amount was more than enough to liquidate the entire balance of the debt, and this event took place before the assignment of the security to the plaintiff. Since this was only a collateral obligation and did not represent an independent debt on its own, when the principal debt was satisfied in accordance with the agreement of the parties, the lien of the mortgage necessarily expired. In order for the mortgage to have survived, it would have had to be given as a substitute for the principal debt and this clearly was never the intention of the parties. (Dibble v. Richardson, 171 N. Y. 131.) The agreement was fully performed by the debtor *686 and furthermore the creditor admitted the existence of the agreement on the witness stand.
There is a second point to consider and that is the gross discrepancy between the amount received on the private sale to the mortgagee-creditor ($2,500) and the amount received a few weeks later on a sale to a stranger (six times as much). The Appellate Division has intimated in the case of Matter of Bond & Mtge. Guar. Co. (273 App. Div. 777) that where a sale is not made during the course of an action, the mortgagor has the right to contest the amount of the claim for a deficiency. Also there has been a growing legislative policy in New York to credit debtors with the full value of collateral in computing any deficiency they may owe, regardless of the price for which it is sold. (See Civ. Prac. Act, § 1083 [on real property mortgages] ; Personal Property Law, § 80-b [on conditional bills of sale]; Lien Law, § 239-d [on chattel mortgages].) However, each of these statutes has self-imposed limitations (e.g., the latter two apply to noncommercial liens of less than $3,000) which prevent its general application to all cases, though why this worthy relief should be given to some debtors and withheld from others, is hard to fathom.
However this may be, we need go no further here than to hold that the debt was extinguished as between the original parties and that therefore an assignee of the collateral, with notice, and without value, got nothing. The complaint is dismissed on the merits.
Although no counterclaim was interposed for cancellation of the mortgage, such relief was requested in the “ wherefore clause ” and since the effect of this decision is to invalidate the mortgage, the judgment may provide that the Clerk satisfy the mortgage of record.